# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

GARY WASHINGTON,

        *Plaintiff*,

vs.

SPIRIT AEROSYSTEMS, INC.,

        *Defendant*.

Case No. 09-2123-EFM

## MEMORANDUM AND ORDER

This is an employment discrimination case. Plaintiff, Gary Washington, an African-American male, formerly worked for Defendant, Spirit Aerosystems, Inc. ("Spirit"). Plaintiff was terminated for failing to meet his supervisor's expectations. Believing that Defendant acted unlawfully toward him, Plaintiff filed this action, alleging that Defendant terminated him on the basis of race in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e-2 ("Title VII"), and denied his request for a team lead on the basis of his race in violation of section 1981 and Title VII.[1] This matter is now before the Court on Defendant's motion for summary judgment (Doc. 69). A hearing on this motion was held July 19, 2011. For the reasons set forth below, the Court grants Defendant's motion.

---

[1] As indicated in his response, Plaintiff has abandoned all other claims asserted in the Pretrial Order.

## I. BACKGROUND[2]

In June 2005, Defendant, Spirit, purchased The Boeing Company's ("Boeing") commercial operations in Wichita, Kansas ("the Wichita facility"). Plaintiff, Gary Washington, an African-American male who had worked for Boeing at the Wichita facility in the years leading up to the sell, was hired by Spirit to work as a parts finisher for the Boeing 737 production line. Shortly after being hired, Plaintiff transferred jobs, and began working as a polisher on the 737 production line.

In November 2006, Defendant promoted Plaintiff to a second-shift, first-level manager position in the area that works on the fuselage of the 737. At the time of Plaintiff's promotion, Defendant did not have a formal training schedule for new first-level managers; rather, it left the matter to the individual's second-level manager's discretion. Initially, Plaintiff's second-level manager was Jim Hans, who, according to Plaintiff, had scheduled him for two months of training with another first-level manager under his control. However, a few days after Plaintiff's promotion, a second-shift, first-level manager position in the area that works on the tail of the 737, an area Plaintiff had never worked in before, and, as a consequence, was not familiar with, opened up,[3] and Plaintiff was transferred to that position. Joe Shook, a non African American, was the second-level manager in the tail assembly area, which has over twelve assembly shops.[4] Shook, who had never had an African-American, first-level manager, placed Plaintiff on the following training plan, a plan

---

[2] As necessary, additional facts will be set forth in the Analysis section of this Order.

[3] Apparently, the employee who had been promoted to the position decided to voluntarily demote out of management after learning that he would have to work the second shift.

[4] A couple of years after Plaintiff's termination, Shook was demoted to a first-level manager position after he was found to have sexually harassed one of Defendant's employees.

he later used with a new white first-level manager: Plaintiff was to first shadow first-shift, first-level managers for six days, then five first-shift, first-level managers, for a week each, were to stay past the end of their shift and make themself available to answer Plaintiff's questions. According to Plaintiff, the last portion of his training was not strictly enforced, a fact of which Shook was aware.

As a manager, Plaintiff was charged with supervising a twenty-five to thirty five person crew that was spread out over seven to eight assembly shops.[5] At the time of Plaintiff's promotion, Plaintiff's crew had been without a first-level manager for approximately three months. Because he was new to management and his crew worked in numerous shops and had not had a supervisor for three months, Plaintiff requested that he be assigned a team leader, i.e., a crew member who is tasked with additional job duties designed to assist the first-level manager. Shook denied the request on the grounds that employees on the second shift were divided into small work groups, the budget did not justify assigning team leaders for such small work groups, and the first shift made the work assignment for employees working on the first, second, and third shifts. Shook testified that it was not uncommon for second-shift, first-level managers to be without team leaders.

On January 30, 2007, Shook gave Plaintiff his first evaluation. For Plaintiff's overall performance, Shook gave Plaintiff the lowest possible rating.[6] For each of the individual categories except one, leadership, Shook gave Plaintiff the lowest possible rating. For leadership, Shook gave Plaintiff the second lowest rating, but noted that Plaintiff had a very good understanding of leadership skills. Despite the low scores, Shook did not consider Plaintiff's evaluation to be a bad

---

[5]First-shift, first-level managers supervise roughly the same number of crew members, but their crews work primarily in one to two assembly shops.

[6]Based on the evaluation form provided by the parties, it appears that there are four possible rankings that an employee can receive: (1) not yet full; (2) low full; (3) high full; and (4) exceptional.

one for a young, first-level manager. At that point in time, Shook did not have any major concerns with Plaintiff's performance and thought that he was progressing.

Following the January 30 evaluation, Plaintiff contends that Shook did not give him any negative feedback about his performance. On February 27, 2007, though, due to perceived deficiencies in Plaintiff's performance, Shook, for the first time in his career as a second-level manager, placed Plaintiff on an Employee Improvement Plan ("EIP"), which Shook had developed with the aid of Human Resources. According to Sandra Hickman, a Human Resources business consultant, at the time Shook told Plaintiff of the EIP, which was going to be active for thirty days after its issuance, it appeared to her that Plaintiff was anxious to become a better manager. As part of the EIP, Plaintiff was to perform a number of tasks, which Shook offered to help him complete. On March 6, Shook sent Plaintiff an email that noted that two of his assignments had been late and lacked the necessary detail, and concluded by stating that "[a]t this point your overall EIP still [sic] a not met and your [sic] needing to do a large amount of catch up."[7]

Sometime in early March, Shook submitted a termination proposal to Human Resources, citing the following as the basis for his proposal: (1) Plaintiff's poor performance; (2) Plaintiff's performance under the EIP, namely his failure to timely turn in sufficiently detailed assignments; (3) Plaintiff's lack of urgency; (4) lack of trust in Plaintiff; (5) his determination that Plaintiff was not acceptable in his role; and (6) his determination that Plaintiff's overall performance was not a good fit for the Company. On March 12, Plaintiff was fired. According to Hickman, employees who continuously fail to meet the expectations set forth in an EIP may be fired. The disciplinary memo Defendant provided Plaintiff stated that the basis for Plaintiff's termination was his failure

---

[7]*See* Doc. 80-5, p. 7.

to meet performance expectations. In an affidavit submitted in support of Defendant's motion, Shook lists the following as examples of ways in which Plaintiff failed to meet his expectations: (1) problems communicating with the employees he supervised; (2) failure to get his employees to complete mandatory training; (3) failure to set production expectations for his employees; (4) problems with completing line checks; and (5) failure to take the initiative to learn the job numbers for the jobs in his area, which prevented him from properly tracking the progress of his employees. Following Plaintiff's termination, his duties were performed by five white employees on a temporary basis. It was not until nearly a year later that a permanent first-level manager was assigned to Plaintiff's old position.

According to Plaintiff, shortly after Defendant's purchase of the Wichita Facility, an African-American female asked a first-level manager how her sister could get a job. Shook, who was not necessarily the target of the employee's question, announced, "Sorry, we already hired enough of them. We already got our quota."[8]

## II. STANDARD

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[9] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[10] A fact is "material" when "it is essential to the proper disposition of the claim."[11] The court must view the

---

[8] *See* Doc. 80-7, p. 2.

[9] Fed. R. Civ. P. 56(a).

[10] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[11] *Id.*

evidence and all reasonable inferences in the light most favorable to the nonmoving party.[12]  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[13]  To satisfy this burden, the moving party need not disprove the opposing party's claim; rather, he must simply point out the lack of evidence on an essential element of that party's claim.[14]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[15]  The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[16]  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[17]  Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[18]  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[19]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure " 'designed to secure the just, speedy and inexpensive determination of every action.' "[20]

---

[12]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[13]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

[14]*Id.*

[15]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[16]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000).

[17]*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

[18]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[19]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[20]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

### III.  ANALYSIS

As stated above, Plaintiff is asserting a wrongful termination claim and a terms and conditions claim.  Plaintiff's claims are based on 42 U.S.C. § 1981, which guarantees that "[a]ll persons within the jurisdiction of the United States shall have the same right in every state and Territory to make and enforce contracts . . . as is enjoyed by white citizens,"[21] and Title VII, which prohibits an employer from "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."[22]  For his claims, Plaintiff may proceed under either a prextext theory, under which the essential inquiry is whether the employer's stated reason for its decision is pretextual, or a mixed motive theory, under which the employee must demonstrate that the employment decision was the product of a mixture of legitimate and illegitimate motives.[23]  Based on the Pretrial Order entered in this case, it appears that Plaintiff has elected to utilize both theories for his claims.

#### *A.  Wrongful Termination Claim*

**Pretext Theory**

To assess Plaintiff's pretext theory, the Court applies the familiar *McDonnell Douglas Corp. v. Green*[24] burden-shifting framework: (1) Plaintiff establishes a prima facie case of discrimination;

---

[21] 42 U.S.C. § 1981(a).

[22] 42 U.S.C. § 2000e-2(a)(1).

[23] *See Hysten v. Burlington N. Santa Fe Ry. Co.*, 2011 WL 892732, at *13 (10th Cir. Mar. 16, 2011).  The fact that Plaintiff's claims are brought under both § 1981 and Title VII is immaterial, as the statutes' elements are the same.  S*ee, e.g., Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991) ("[I]n racial discrimination suits, the elements of a plaintiff's case are the same . . . whether that case is brought under §§ 1981 or 1983 or Title VII.").

[24] 411 U.S. 792 (1973).

(2) Defendant offers a legitimate, nondiscriminatory reason for taking the action it did; and (3) Plaintiff produces evidence that the proffered reason is pretextual.[25] To establish a prima facie case, Plaintiff must show that: (1) he is a member of a protected class; (2) he is qualified for his position; (3) he suffered an adverse employment action; and (4) his termination occurred under circumstances that give rise to an inference of discrimination.[26]

In this case, Defendant argues that Plaintiff cannot satisfy either the second or fourth prong of the prima facie test. Specifically, Defendant contends that Plaintiff was not qualified for his position and that Plaintiff's evidence does not reasonably suggest that Plaintiff was discriminated against based on his race. Defendant's first argument lacks merit. Simply put, because Defendant selected Plaintiff to be a first-level manager, the record supports a jury finding that Plaintiff was qualified for his position.[27] As for Defendant's second argument, it appears to be a closer call. While it is fairly established that a showing that the plaintiff's former position was immediately filled by someone outside of the protected class can satisfy the fourth prong,[28] it is less clear whether a showing that the plaintiff's former position was permanently filled by a white employee, but not until nearly a year later, would have the same effect. Defendant has offered no case law in support of its contention that the second showing would not satisfy the last prong of the *McDonnell Douglas* test.

---

[25]*See, e.g., Crow v. ADT Sec. Servs., Inc.*, --- F.3d ----, 2011 WL 1532536, at *3-4 (10th Cir. 2011).

[26]*See, e.g., Plotke v. White*, 405 F.3d 1092, 1099-1101 (10th Cir. 2005).

[27]*See, e.g., Goldstein v. Sprint/United Mgmt. Co.*, 2006 WL 2631948, at *7 n.6 (D. Kan Sept. 13, 2006) (noting that the fact that the defendant had selected the plaintiff for the position that he was ultimately terminated from raises a jury question as to whether the plaintiff was qualified for that position).

[28]*See, e.g., Graham v. Best Buy Stores, L.P.*, 298 F. App'x 487, 493 (6th Cir. 2008); *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 242 (3d Cir. 2007); *Siraj v. Hermitage in N. Va.*, 51 F. App'x 102, 110 (4th Cir. 2002); *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001); *Toth v. Gates Rubber Co.*, 2000 WL 796068, at *7 (10th Cir. June 21, 2000); *Fields v. J.C. Penney Co., Inc.*, 968 F.2d 533, 537 (5th Cir. 1992); *Keyes v. Sec'y of the Navy*, 853 F.2d 1016, 1023 (1st Cir. 1988).

Due to this lack of support for its position, and in light of the fact that the burden of establishing a prima facie case of discrimination is not onerous,[29] the Court assumes for purposes of this motion that Plaintiff has established a prima facie case.

With regard to the second step of the analysis, it is easily satisfied here, as "[p]oor performance is a quintessentially legitimate and nondiscriminatory reason for termination."[30] Therefore, the remaining issue is whether Plaintiff can show pretext, i.e., can he "show[] weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Defendant's] proffered legitimate reason[] for its action such that a reasonable factfinder could rationally find them unworthy of credence."[31]

In an attempt to establish pretext, Plaintiff cites to the following pieces of evidence: (1) the January 30 performance review and the testimony relating to it; (2) the fact that Shook needed help from Human Resources to develop the EIP; (3) Ms. Hickman's impression that Plaintiff seemed anxious to learn and become a better supervisor; (4) Plaintiff's performance under the EIP's requirements; (5) the fact that Plaintiff was terminated within less than thirty day of when the EIP went into effect; (6) the fact that Shook was merely demoted for violating Defendant's policies, while Plaintiff was terminated; (7) the brevity of Plaintiff's termination memo; (8) the fact that the affidavit submitted by Shook in support of Defendant's motion asserts reasons for termination that were not initially stated; (9) the fact that Shook sexually harassed one of Defendant's employees; (10) Shook's

---

[29]*See, e.g., Paup v. Gear Prods. Inc.*, 327 F. App'x 100, 108-09 (10th Cir. 2009).

[30]*Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005).

[31]*Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1222 (10th Cir. 2007) (internal quotation marks omitted).

ambiguous statement shortly after the divestiture; (11) the lack of training he received; and (12) the fact that the termination decision was based primarily upon subjective criteria.

Beginning with Plaintiff's first pieces of evidence, they are not indicative of pretext. In order for performance reviews to be probative of pretext, they must demonstrate that the plaintiff's supervisor viewed the plaintiff as performing at a high level and they must have been issued shortly before an adverse action was taken against the plaintiff.[32] Here, the latter requirement is likely met, as only a few weeks passed between when the performance review was given and Plaintiff was terminated. However, the former is not. While it is true that there is evidence that suggests that at one point in time Shook believed Plaintiff had the potential to develop into a good manager, namely Shook's testimony that the review he gave Plaintiff was not a bad one for a young manager and that, at the time the review was given, Plaintiff was progressing, Plaintiff had a good understanding of leadership, and that he did not have any major concerns with Plaintiff's performance, there is no evidence that Shook ever viewed Plaintiff as meeting his expectations for a first-level manager. As a result, the evidence relating to Shook's review of Plaintiff's performance is not probative of pretext.

Similarly, the fact that Human Resources assisted Shook in formulating Plaintiff's EIP is not evidence of pretext. This evidence could be probative of pretext only if Shook had faulted Plaintiff for engaging in conduct he himself had engaged in, i.e., for asking for guidance on how to complete the EIP. Here, the record does not support such a conclusion, as it is uncontroverted that Shook made

---

[32]*Cf. Avila v. Jostens, Inc.*, 316 F. App'x 826, 834 (10th Cir. 2009) (finding that the defendant's decision to terminate the plaintiff for poor work quality in September 2003 was inconsistent with the August 2003 annual performance review rating the plaintiff's quality as exceptional, and, thus, was evidence of pretext); *Austin v. Caterpillar, Inc.*, 67 F. App'x 956, 960 (7th Cir. 2003) ("[C]ircumstances may arise when the evidence of the employee's performance is so strong as to place into doubt the veracity of the employer's professed belief to the contrary.").

himself available to Plaintiff and there is no evidence suggesting that Shook held any request for help Plaintiff may have made against him. Thus, this evidence cannot serve as a basis for finding pretext.

Plaintiff's third piece of evidence also cannot serve as a basis for finding pretext. A co-worker's opinions are capable of showing pretext only if they contradict those espoused by the terminating officer.[33] In this case, Shook did not opine on Plaintiff's attitude at the time the EIP was implemented. Furthermore, Hickman has expressed no opinion about how Plaintiff actually performed under the plan or was performing his job in general. Accordingly, Hickman is of no help to Plaintiff.

Plaintiff's effort to show pretext by arguing that some of the reasons given by Shook in support of his proposal to terminate Plaintiff are inconsistent with Plaintiff's actual performance under the EIP is of no avail. First, Plaintiff's subjective view of how he performed under the EIP is irrelevant.[34] Second, the documentary evidence relating to Plaintiff's EIP performance does not directly contradict the conclusions reached by Shook and stated in the termination memo. Therefore, this evidence does not reasonably suggest pretext.

As for the fact that Plaintiff was terminated less than thirty days before the EIP was to expire, it is not indicative of pretext. In order for such evidence to have such an effect, Plaintiff must show that the thirty-day requirement was rigorously enforced.[35] Here, Plaintiff has failed to carry his burden, as nothing in the record indicates that Defendant gave its employees the full thirty days in

---

[33]*See, e.g., Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1174 (10th Cir. 2003).

[34]*See, e.g., Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004).

[35]*See, e.g., Ritchie v. Indus. Steel Inc.*, 2011 WL 1899570, at *7 (11th Cir. May 19, 2011); *Cooper v. Wal-Mart Stores, Inc.*, 296 F. App'x 686, 696 (10th Cir. 2008); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 541 (7th Cir. 2007).

every case, and, in fact, the submitted evidence suggests just the opposite. As a result, this evidence is not probative of pretext.

Further, the fact that Plaintiff was terminated while Shook was only demoted after violating Spirit's policies is not relevant to the pretext inquiry. In order for evidence of disparate treatment to be probative of pretext, the comparator must be similarly situated, which means that the comparator must have dealt with the same supervisor, been subject to the same standards governing performance evaluation and discipline, and committed a violation of comparable seriousness.[36] Suffice it to say that Plaintiff has not met his burden of showing that Shook, then a second-level manager, was similarly situated. Thus, this evidence is irrelevant.

Additionally, the brevity of the termination of memo is not indicative of pretext. To be evidence of pretext, there must be a showing that the memo's lack of detail was a deviation from the normal practice.[37] In this case, no such showing has been made. As a consequence, the termination memo does not suggest pretext.

With regard to the fact that Shook's affidavit states reasons for Plaintiff's termination that were not initially asserted, it is not probative of pretext. While it is true that new justifications for an adverse action can be evidence of pretext, they have such an effect only when they are either inconsistent with the record's evidence or are substantially different than those originally stated.[38] Here, neither of these requirements are met. Accordingly, no inference of pretext is warranted.

---

[36]*See Trujillo v. Huerfano Cnty. Bd. of Cnty Comm'rs*, 349 F. App'x 355, 365-66 (10th Cir. 2009).

[37]*See, e.g., Cooper*, 296 F. App'x at 695; *Matthews v. Euronet Worldwide, Inc.*, 271 F. App'x 770, 776 (10th Cir. 2008).

[38]*See, e.g., Matthews*, 271 F. App'x at 774; *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 835 (8th Cir. 2002).

Plaintiff's reliance on the fact that Shook was demoted for sexually harassing one of his employees is misplaced. This fact, without any further factual development, is simply not probative on the issue of whether Shook's stated reason for terminating Plaintiff is pretextual.[39]

Plaintiff's tenth and eleventh pieces of evidence are equally unavailing. First, an ambiguous, temporally remote comment, such as the one made by Shook at least one-and-a-half years before Plaintiff was put on an EIP, does not demonstrate pretext.[40] Second, the evidence relating to Plaintiff's training, or the alleged lack thereof, does not raise an inference of pretext because there has been no showing that similarly situated employees, i.e., employees who had Shook as a supervisor, received better training.[41] Therefore, these pieces of evidence are of no assistance to Plaintiff.

Lastly, Shook's reliance on subjective criteria does not show pretext. Reliance on subjective criteria, by itself, is not sufficient to establish pretext; rather, such evidence must be supplemented with additional circumstantial evidence to demonstrate pretext.[42] Here, as shown above, none of the other evidence Plaintiff offers to establish pretext has such an effect. As a result, Plaintiff is left only with the fact that subjective criteria were used during the termination process to show pretext, which,

---

[39]*Cf. Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 801 (10th Cir. 1997) (stating that evidence of race discrimination was irrelevant in a case involving only a sexual harassment claim).

[40]*See, e.g., Wagoner v. Pfizer, Inc.*, 391 F. App'x 701, 707-08 (10th Cir. 2010) (citing *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1184 (10th Cir. 2006)*; Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994)).

[41]*See Sydney v. ConMed Elec. Surgery*, 275 F. App'x 748, 755 (10th Cir. 2008).

[42]*See, e.g, Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007); *Pippen v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1195 (10th Cir. 2006).

under the existing circumstances, is insufficient to raise a factual dispute as to whether the reason stated for Plaintiff's termination was false.[43]

In sum, viewing Plaintiff's evidence as a whole and in a light most favorable to him, the Court concludes that no reasonable jury could find in his favor on the issue of pretext. While it is true that Plaintiff has produced evidence that could lead some to conclude that Plaintiff's termination was unwise, unfair, or incorrect, Plaintiff has failed to produce evidence capable of raising a factual question as to whether Defendant "honestly believed [the reasons offered for Plaintiff's termination] and acted in good faith upon those beliefs."[44] Therefore, because neither the Court nor a jury are to "act as a super personnel department, second guessing [an] employer['s] honestly held (even if erroneous) business judgments,"[45] the Court finds that summary judgment should be granted on Plaintiff's wrongful termination pretext theory.

**Mixed Motive Theory**

To succeed on a mixed motive theory, Plaintiff must show that "that the alleged [discriminatory] motive actually relate[s] to the question of discrimination in the *particular* employment decision."[46] To make this showing, Plaintiff may rely upon circumstantial evidence.[47]

---

[43] *See Matthews*, 271 F. App'x at 775 (finding that the defendant's reliance upon subjective factors to terminate the plaintiff was not evidence of pretext because the record's evidence supported the subjective conclusions reached by the defendant).

[44] *Riveria v. City & Cnty. of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (internal quotation marks omitted).

[45] *Hysten v. Burlington N. Santa Fe Ry. Co.*, 415 F. App'x 897, 905 (10th Cir. 2011) (internal quotation marks omitted).

[46] *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1226 (10th Cir. 2008) (internal quotation marks omitted) (second alteration in original) (emphasis in original).

[47] *Id.*

However, such evidence must *directly* show that a discriminatory reason served as a basis for the adverse action.[48]

In this case, Plaintiff has failed to specifically identify the evidence he believes directly shows a discriminatory motive. However, based on the arguments contained in the portion of his brief discussing pretext, it appears that Plaintiff believes that the following pieces of evidence satisfy his burden: (1) he was the only African-American under Shook's supervision; (2) he was the only employee Shook had placed on an EIP; (3) he was the only employee Shook had ever terminated; (4) his position was not eliminated after his discharge; and (5) he was replaced by employees outside of his protected class.

Plaintiff's evidence is insufficient to create a genuine issue of material fact. First, because Plaintiff has not produced any evidence showing that an African American applied for a first-level manager position and Shook rejected his application, the fact that Plaintiff was the only African American to serve as a first-level manager under Shook is immaterial.[49] Second, the fact that Plaintiff was the only person that Shook ever placed on an EIP or fired is not relevant because there is no evidence demonstrating that employees outside of the protected class engaged in the same behavior but were treated differently.[50] Third, nothing about the fact that Plaintiff's position was not eliminated is suggestive of discrimination. Fourth, while evidence that a protected class member was replaced by someone outside of the class can establish a prima facie case of discrimination, it is

---

[48]*Id.* at 1227.

[49]*See, e.g., Benjamin v. Katten Muchin & Zavis*, 10 F. App'x 346, 352 (7th Cir. 2001); *Gay v. Waiters' & Diary Lunchmen's Union, Local No. 30*, 694 F.2d 531, 548 (9th Cir. 1982); *Boles v. City of Phila. Water Dep't*, 2010 WL 2044473, at *5 (E.D. Pa. May 21, 2010).

[50]*See, e.g., King v. Univ. of Minn.*, 774 F.2d 224, 228 n.7 (8th Cir. 1985).

wholly insufficient to raise an inference of discrimination.[51] Accordingly, summary judgment should be granted on Plaintiff's wrongful termination mixed-motive theory.

### B. Terms and Conditions Claim

**Pretext and Direct Evidence Theories**

Plaintiff contends that he was denied a team leader on account of his race. To succeed on this claim under either a pretext or direct evidence theory, Plaintiff must, among other things, produce evidence suggesting that the denial of his request for a team lead was racially motivated.[52] In support of his terms and conditions claim, Plaintiff points solely to the fact that a number of white first-level managers on the second shift had team leads.

After reviewing the record, the Court concludes that Plaintiff's evidence is incapable of producing an inference of discrimination. The problem with Plaintiff's evidence is that Plaintiff has made no showing that the white managers he points to are similarly situated, which he has the burden of doing.[53] To begin with, all but two of the cited managers were supervised by someone other than Shook.[54] For the two managers Shook did supervise, Plaintiff has failed to demonstrate that these managers supervised crews with characteristics similar to his, e.g., were the same size, worked in the same shops, and had the same amount of work. Therefore, in light of these deficiencies, and because

---

[51]*See, e.g., Hines v. Hillside Childrens' Ctr.*, 73 F. Supp. 2d 308, 321-22 (W.D.N.Y. 1999) (collecting cases); *cf. Brantley v. Unified Sch. Dis. No. 500*, 405 F. App'x 327, 333 (10th Cir. 2010) (stating that a close temporal proximity between the plaintiff's demotion and his complaint to his supervisor's supervisor, which is evidence capable of establishing a prima facie case of retaliation, was insufficient to prevent summary judgment from being issued on his mixed-motive retaliation theory).

[52]*See,e .g., Faragella v. Douglas Cnty. Sch. Dist. RE 1*, 411 F. App'x 140, 155 (10th Cir. 2011) (*McDonnell Douglas* case); *Fye*, 516 F.3d at 1226 (mixed motive case).

[53]*See, e.g., Riggs*, 497 F.3d at 1121 n.4.

[54]*See, e.g., E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 801 (10th Cir. 2007) (stating that in order for a comparator to be similarly situated, they must have been supervised by the same supervisor).

Plaintiff relies wholly upon his comparator evidence to make his claim, the Court concludes that summary judgment should be granted on Plaintiff's terms and conditions claim.

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (Doc. 69) is hereby GRANTED.

**IT IS SO ORDERED**.

Dated this 25th day of July, 2011.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE